NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0271n.06

No. 23-1244

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jun 20, 2024
KELLY L. STEPHENS, Clerk

DESHAWN ANDREW BOYLAN,

      Petitioner-Appellee,

v.

MICHAEL BURGESS, Warden,

      Respondent-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

OPINION

Before: MOORE, KETHLEDGE, and BLOOMEKATZ, Circuit Judges.

KETHLEDGE, Circuit Judge. A Michigan jury convicted Deshawn Boylan of first-degree felony murder for his part in Jacob Rameau's death. After his unsuccessful state-court appeals, Boylan brought this pro se petition seeking habeas relief. A magistrate judge (presiding by consent) conditionally granted the writ on the second of two grounds, concluding that Boylan's trial counsel had rendered ineffective assistance by not moving to quash the felony-murder charge on collateral estoppel grounds. We vacate the order granting habeas relief because Boylan has not demonstrated that the state court's decision involved an unreasonable application of *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

I.

One night in June 2014, Jacob Rameau and his brother Christopher Hotz went to DJ's Pub in Muskegon, Michigan. Rameau rode his motorcycle there, while Hotz drove his car—a 1991 Dodge Dynasty—and parked it with the keys inside and the windows rolled down. That same night, Harry McBride drove himself and four friends—including Deshawn Boylan and Robert

Gee—to the same bar and parked next to Hotz's car. Later, when that group came out of the bar, McBride, Gee, and the two other passengers returned to McBride's car. But Boylan did not.

Instead, Boylan got into Hotz's car, found its keys, and drove it away. At Gee's insistence, McBride and the others followed in McBride's car. Meanwhile, Hotz came out of the bar and saw Boylan driving away. Hotz shouted to Rameau; Rameau jumped on his motorcycle to give chase; and Hotz called 911. The state court described what happened next:

> [Boylan], followed by McBride, followed by Rameau drove along at high speeds. Eventually, Rameau passed McBride and pulled alongside [Boylan] who had stopped abruptly on a residential street. Gee pulled out a gun, leaned out the window [of McBride's car], and fired several shots at Rameau. Rameau pulled away and McBride pulled alongside [Boylan]. McBride heard [Boylan] state that he had intended to "pop" Rameau before Gee started shooting. Gee then fired another shot in the motorcycle's direction.

*People v. Boylan*, No. 335556, 2018 WL 1936182, at *1 (Mich. Ct. App. Apr. 24, 2018). Gee's shots hit Rameau, who died a short time later. Boylan and McBride drove on and then abandoned the stolen car after Boylan and Gee took some things from it—including stereo speakers that they pawned the next day.

Within weeks, prosecutors charged Boylan with unlawful driving away of an automobile ("UDAA"), as a habitual offender. *See* Mich. Comp. Laws §§ 750.413, 769.11. Boylan pled no contest to that UDAA charge (with a mid-guidelines cap on his minimum sentence). At sentencing in December 2014, the judge determined the guidelines and sentenced Boylan to prison for a minimum of 38 months and a maximum of ten years. Not long after Boylan's UDAA conviction, Gee was convicted of first-degree murder at a bench trial. A year later, prosecutors charged Boylan with murder based on the same factual circumstances.

Boylan went to trial on the murder charge in August 2016, and a jury found him guilty of first-degree felony murder premised on larceny of the stolen car or the speakers. *See* Mich. Comp. Laws § 750.316(1)(b). Boylan raised several claims of ineffective assistance of counsel in a motion for a new trial, which the trial judge denied.

In 2018, the Michigan Court of Appeals affirmed Boylan's felony-murder conviction. The court rejected, among other things, the claim that Boylan's trial counsel was ineffective for failing to seek dismissal of the felony-murder charge on res judicata or collateral estoppel grounds. *See Boylan*, 2018 WL 1936182, at *5. Boylan sought leave to appeal, which the Michigan Supreme Court denied in December 2018.

In 2019, Boylan filed this pro se habeas petition. The petition asserted two grounds for relief: a due-process claim as to the sufficiency of the evidence, and a Sixth Amendment claim that trial counsel was ineffective for not moving to quash Boylan's felony-murder charge based on his earlier UDAA conviction. The parties thereafter consented to have the matter decided by a magistrate judge. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

The magistrate judge conditionally granted Boylan habeas relief on the second of his two claims. *See Boylan v. Nagy*, 656 F. Supp. 3d 743 (W.D. Mich. 2023). Specifically, the judge held that the state court had unreasonably applied *Strickland* by overlooking whether a finding made during Boylan's UDAA sentencing hearing could have precluded his prosecution for felony murder. *Id*. at 759-61. The district court's judgment ordered that Boylan's felony-murder conviction and sentence be vacated unless the State initiated a new prosecution within 90 days. The State appealed. This court then granted a stay pending appeal.

II.

We review the magistrate judge's decision de novo. *See Barton v. Warden*, 786 F.3d 450, 460 (6th Cir. 2015) (per curiam). A prisoner is not entitled to habeas relief if he has procedurally defaulted a claim (absent good cause) or if the state court has adjudicated his claim on the merits and the state court's decision was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d).

Boylan claims that his trial attorney performed ineffectively by not moving to quash the felony-murder charge as barred by issue preclusion (or collateral estoppel, as the Michigan courts call it). *See People v. Gates*, 452 N.W.2d 627, 630 n.7 (Mich. 1990). All agree that the state court adjudicated that claim on the merits under a standard identical to *Strickland*. *See Boylan*, 2018 WL 1936182, at *4. The *Strickland* standard requires that a petitioner prove two things: first, that his lawyer's performance "fell below an objective standard of reasonableness"; and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1987). Those requirements may be addressed in any order. *Id*. at 697.

A.

*Strickland* dictates that we "indulge a strong presumption" that a lawyer performed reasonably. *Id*. at 689. When, as here, the state court "has decided that counsel performed adequately," our review becomes "doubly deferential." *Dunn v. Reeves*, 594 U.S. 731, 740 (2021) (per curiam). The Michigan Court of Appeals explained that Michigan has long recognized issue preclusion in criminal proceedings. *See Boylan*, 2018 WL 1936182, at *5 (citing *People v. Albers*, 100 N.W. 908, 910–11 (Mich. 1904)). And the court held that Boylan's UDAA conviction would preclude retrial on the elements of that offense, but the court rejected Boylan's claim because none

-4-

of those elements required a finding that Boylan "had not committed a larceny." *Id.* The magistrate judge agreed that Boylan could not benefit from the preclusive effect of the elements of his UDAA conviction. But until the magistrate judge's decision in 2023, no one had identified Boylan's prior sentencing finding as potentially preclusive under Michigan law.

The one sentencing-related Michigan decision cited by the magistrate judge and by Boylan on appeal provides no support: the unpublished decision was stripped of its "precedential force and effect" and the prior habitual-offender determination at issue there was made by a jury (as required by statute at the time), not the judge. *See People v. Jackson*, 539 N.W.2d 758, 761 (Mich. Ct. App. 1995), *nullified* 549 N.W.2d 574 (Mich. 1996) (Table). And a reasonable lawyer looking to our court's precedent would have found no clear support either. Indeed, in one case, we doubted that "a determination reached in a criminal-sentencing proceeding could *ever* satisfy the [full-and-fair-opportunity] requirement" for issue preclusion. *Kosinski v. C.I.R.*, 541 F.3d 671, 679 (6th Cir. 2008) (noting that two other circuits had held "issue preclusion presumptively inapplicable to sentencing findings" but declining to determine the issue); *see also United States v. Roberts*, 59 F. App'x 86, 88 (6th Cir. 2003).

Nor does the magistrate judge's reliance on two dissimilar out-of-circuit district court decisions to the contrary show that Boylan's lawyer's performance was objectively unreasonable. *Boylan*, 656 F Supp. 3d at 756–57. When AEDPA applies, "the question is not whether counsel's actions were reasonable"; instead, we ask whether "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo v. Moore*, 562 U.S. 115, 123 (2011) (citation omitted). Here, a fairminded jurist could conclude that Boylan's lawyer's performance did not fall below an objective standard of reasonableness.

B.

Boylan argues there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687. We look to the records of the prior proceeding when determining whether issue preclusion could have had any effect on the result there. *People v. Trakthenberg*, 826 N.W.2d 136, 141 (Mich. 2012); *United States v. Inman*, 39 F.4th 357, 364 (6th Cir. 2022).

The transcript from Boylan's UDAA sentencing reflects that the judge ruled on three contested offense variables (OVs) in determining Boylan's minimum guidelines sentence. The judge first assessed 100 points for OV-3 based on a factual finding that Boylan's unlawful driving away was a "but for" cause of Rameau's death. *See* Mich. Comp. Laws § 777.33(2)(b) (OV-3); *People v. Laidler*, 817 N.W.2d 517, 520–22 (Mich. 2012) (holding OV-3's phrase "death results from" requires only "but for" causation). Then the judge chose not to assess any points for two firearm offense variables—OV-1 and OV-2—stating only: "I don't find this to be a multiple offender case." *See* Mich. Comp. Laws § 777.31(2)(b) (OV-1) ("In multiple offender cases, if 1 offender is assessed points for the presence or use of a weapon, all offenders shall be assessed the same number of points."); *id*. at § 777.32(2) (OV-2) (similar). That latter finding is what Boylan claims could have precluded retrial of whether Gee and the others acted in concert with Boylan with respect to the felony-murder charge.

"[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that [same] issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 444 (1970); *see also Trakthenberg*, 826 N.W.2d at 141. An issue of fact "ranks as necessary or essential only when the final outcome hinges on it." *Inman*, 39 F.4th at 364 (quoting *Bobby v. Bies*, 556 U.S. 825, 835 (2009)). Here, the sentencing judge's finding

that the UDAA offense was not a "multiple offender case" was neither necessary nor essential to the final outcome there because the 100 points assessed for OV-3 had already put Boylan in the highest offender-variable category (*i.e.*, 75 points or more). *See* Mich. Comp. Laws § 777.66 (Table) (eff. 12/15/98). The sentencing judge himself noted as much. *See* PageID 326 (confirming that "at 105 on the OVs" the guidelines "box" would be the same). Thus, the finding that the UDAA offense was not a "multiple offender case" was not an ultimate fact essential to the judgment—and could not have had preclusive effect.

Issue preclusion also requires that the prior proceeding had necessarily determined a fact that would be required for conviction in the second prosecution. *See Inman*, 39 F.4th at 364; *People v. Beverly*, No. 344460, 2020 WL 746939, at *4–5 (Mich. Ct. App. Feb. 13, 2020) (holding earlier plea to aggravated stalking did not necessarily determine a fact required for later conviction for witness intimidation). At Boylan's UDAA sentencing, counsel presented arguments for and against finding that his UDAA prosecution was a "multiple offender case" for purposes of OV-1 and OV-2. Defense counsel argued that these provisions did not apply because Boylan had no codefendants. The prosecutor argued that these provisions should apply under a "but for" standard—and added that the state was "not asking the Court to decide whether Mr. Boylan aided and abetted in the murder in this case." PageID 323. Moreover, under Michigan law, the judge could have chosen not to assess points for these offense-specific variables because no other offender in the case had been assessed any points for the UDAA offense. *See People v. Dupree*, 993 N.W.2d 185, 187 (Mich. 2023). But the judge did not say *why* this was not a "multiple offender case"; and thus Boylan cannot show that, in his UDAA case, the court necessarily decided—or even decided at all—a fact that would be required to convict Boylan of felony murder. Boylan has not shown a reasonable probability that, but for a motion to quash based on the

preclusive effect of the prior sentencing finding, the result would have been different. *Strickland*, 466 U.S. at 687. The state court did not unreasonably apply *Strickland* in rejecting Boylan's claim.

*      *      *

The order and judgment conditionally granting Boylan habeas relief are vacated and the matter is remanded for further proceedings consistent with this opinion.